We have five cases on the calendar this morning, two patent cases, one from the district court, one from the PTAB, two cases from the Court of Federal Claims, and one veterans case which is being submitted on the briefs and will therefore not be argued. First case is Digital Media Technologies, Inc. v. Netflix, Amazon, Hulu. 2017-2408, 9 and 10. Mr. Risley. Good morning. May it please the court. The district court should be reversed due to its failure to conduct a proper Step 1 analysis. The district court failed to come up with a specific definition for what the alleged abstract idea was at Step 1. The district court never analyzed the claim in the exact language of the claim. It also never looked at the claimed advance over the prior art despite the evidence of record. The district court also failed to look at the prosecution history of the 764 patent which was in record. It specifically said that the only relevant evidence is the patent and it did not. Didn't the court simply subsume Step 1 into its Step 2 analysis? No, Your Honor. The court's entire Step 1 analysis simply put the patent is directed to an abstract idea. Specifically, it's directed to the abstract idea of delivering content, etc. So it dealt with Step 1 even if it didn't call it such. Your Honor, there were two paragraphs for Step 1 in its entirety and the district court came up with two potential definitions, one from 30,000 feet and another flying closer to the ground and ultimately concluded in a footnote that at the end of the day it seems like Step 1 remains an exercise of I know it when I see it. And there was not the analysis of Step 1, not in a meaningful way that's required by this court's precedent or even the Supreme Court to look at the claim and look at the advance over the prior art. Specifically also, Your Honor, on APX 9, page 9 of the order, the judge said that the only relevant factual allegations are those contained in the 764 patent itself. We submitted the prosecution history similar to the data engine case as an exhibit in our opposition to the motion to dismiss and the district court completely failed to consider or analyze anything in the prosecution history. And the prosecution history certainly in terms of the notice of allowance, the final response that was filed that led to the notice of allowance, all describe and explain the advance of Claim 1 of the 764 patent over the cited prior art, which is I'll get to when we come to Step 2, specifically Horry and Rump, which were cited during the prosecution and the patent office determined the claimant was patentable over those two prior references. The district court completely ignored it. In fact, flat out says on page 9 of the order, it's not relevant because the only relevant facts are the patent itself. The district court also failed, or as in, also failed, Your Honors, to look at, as the court said in Enfish, to compare Claim 1 of the 764 patent to any claims in any other cases or decisions that the court has rendered and do a comparison of similarities or differences between those claims. Didn't do that at all. And that's one of the stated primary tests for determining whether Step 1 is met. And that is as well, Your Honor, to your question. Is Step 1 a legal question? I mean, even if the district court's analysis is fairly cursory, we still have an obligation to look at this and determine whether it's directed to an abstract idea or not, and therefore whether it's eligible or not. But, Your Honor, to look at whether or not it's eligible or not, the court's precedent says you need to look at whether it's an advance over the prior art. And you need to look at the claim at a minimum and all the elements in the claim and decide whether or not there is an advance or not. And here we have... I think I just asked you whether it really mattered, since that's a question of law, whether the district court did it to your satisfaction or whether we should, instead, be just arguing about whether it actually is directed to an abstract idea or not here. Well, I think the overall 101 determination, Your Honor, is a question of law. I think the precedent is saying that certainly for Step 2, it's a question of fact. Well, I thought you were talking about the district court's errors on Step 1, though. Yes, I think you need to look at... I don't think there's any precedent that suggests Step 1 is anything but a question of law. I'm not aware of any, but I think in order to determine whether or not, as a question of law, Step 1 is met or not, you need to look at the advance over the prior art, as the court said. We can do that even if you were right that the district court didn't. Yes, sir. Yes, Your Honor. Okay. So, you've got this patent and it says in column 4, advantages of the present invention, and it lists 144 advantages of the present invention, none of which is what you are now claiming is the advantage, right? No, Your Honor. I think there are several citations that I could give, Your Honor, in the specification that talked about the claimed advance in terms of the... I'm talking about you yourself listed advantages of the present invention, 144 advances, and not one of them is the advance that you're claiming now, right? No, Your Honor. If I understand the question, the specification clearly talks about... Where is the advance that you're claiming now within the list of 144? The specification I can give you many sites that talks about... Answer my question. You say there's a heading that says advantages of the present invention, and that there are 144 supposed advantages. Show me where the advantage that you're claiming now is in that list. Your Honor, throughout them, there are many. I'd be happy to point to you. Point to one. The claim has 12 steps. No, you've got to answer the question. There's a list of 144 supposed advantages. Please tell me where that list includes the advantage that you're claiming now. Your Honor, I'd point the court to numbers, advantage number 90, 96, 101. Which is your best one? Well, Your Honor, that's my point. This is a detailed claim with 12 steps in a specific sequence. Each step is... I don't see that 90, for example, has anything to do with the advantage you're claiming. Your Honor, you have steps 132, 133, that are speaking about the content license and asymmetric encryption, which is a component of the 12 steps, and is in fact what the patent office... What you're now claiming the advantage is combining and encrypting together the content key and the usage parameters, right? Yes, Your Honor. Where is that in the 100 list of advantages? I think there's a... Your Honor, there's a combination of the disclosure of the specification. There is not one specific line, I think is perhaps what you're asking. But the evidence of record that's in the file history, particularly the IPR file history, is in the testimony of our IPR expert, that if you look at, for example, numbers 122, which talks about XML files, 125, which talks about the content key in an XML file, and then you look at 132, 133, in combination to a person of ordinary skill in the art, Your Honor, these points, 139 as well, speak to a new data structure and how the new data structure, the content license comprising a content key and usage parameters... What's the specific new data structure you're talking about? Is it a combination of these different types of encryption and adding user limitations? The new data structure, Your Honor, is the content license comprising a content key and usage parameters. And the PTAB, the patent trader in the IPR proceedings, specifically found based on their IPR petition that that content license was new. It was not in the prior art. They had a year to pick the prior art they wanted to submit in the IPR. The patent office said the addition of the usage parameters was not an insignificant addition by any reasonable standard. That's the novel new content license, which is the new... So let me... I'm just trying to get precisely what you think is the improvement and what's not abstract. So it's the content license is a new form of content license that combines what? The usage parameters with... The content key. Which is the encryption stuff. No, Your Honor. Okay, just the content key then. So the new license combines usage parameters with the content key. Yes, Your Honor. Is there anywhere that it says that's the advantage of this invention? Or rather, you're just asking us to infer that from 144 different descriptions of specific parts of this. Your Honor, ultimately I suppose I am asking you to infer from the couple of points that I've mentioned. The evidence of record, though, in a Rule 12 context, which should all be construed in favor of DMTI, is that it teaches a person of ordinary skill in the art... Are we at Step 2 now? No, we're not. I don't understand why you're arguing evidentiary matters to me at Step 1. Well, then let me just... The claims are paramount. And I don't think there's any dispute at all from a non-factual point of view at Step 1. The claim is paramount. And a lot of the cases, it seems to me, are very broad, relatively short claims that have perhaps broader generic language. And the Court has gone to the specification to look at and try to find some of the answers of the questions that you're asking. Here, you don't have to do that. The parties stipulated to the claim constructions. The PTAB construed the claim terms consistent with what we are proposing to the Court today. Can I ask you this? Are the usage parameters you're suggesting... Have you invented any type of new usage parameters? Or is that just the rather abstract idea of imposing certain usage parameters on a downstream consumer? No, Your Honor. The patent has not invented new usage parameters. And what about... I think the other part you said that was important was the key. The content key? Yeah. The content key... Is this some kind of new structure, or is this... No, Your Honor. ...atypical? So what you're saying is we have two abstract ideas, but you combine two abstract ideas that now form a non-abstract idea. No, Your Honor. I don't believe I'm saying that. I think we are saying, as the Patent Office found, that no one before had ever put the usage parameters... I'm not sure how helpful that is. I mean, we've said, I think, before, that it may be that it's a non-obvious idea, but it can still be an abstract idea. Just because you come up with a new abstract idea doesn't render it eligible under 101. Your Honor, I think that if you look at the advance over the prior art... I mean, let me take you right back to Alice. Nobody had ever done intermediated settlement in the specific way that Alice did over a computer. It was certainly non-obvious, but that didn't save it from ineligibility under 101. So the fact that you have a non-obvious combination of two abstract ideas may clear a 103 threshold, but it doesn't answer the 101 question, does it? Your Honor, I think it does, because, again, the test is to look at the advance over the prior art, and if you compare Claim 1 of the 764 patent to other claims in NFISH or BSG, for example... I mean, if that's the test, then why didn't the Supreme Court uphold the patent in Alice? I don't know, Your Honor. Counsel, you're well into your rebuttal time. You can continue or save it. I'd like to save that and address Step 2 when I return. Thank you. Bagatelle. May it please the Court, Dan Bagatelle, on behalf of the appellees with me and my colleagues Matthew Bernstein and Martin Gilmore. I'd like, if I may, to start with a threshold issue, which is the reliance of DMTI on the Zatkovich Declaration. We saw it all through the reply brief. We've heard it again this morning. And I want to point out that the Zatkovich Declaration is not in the record on the 101 motion, and any reliance on that has been waived. It was attached to a supplemental claim construction brief, but as Your Honors have seen, there was no claim construction issue ultimately. The party has agreed on that. So they've never submitted any of this evidence from the IPR in this record for this motion. And there's a case, a 2008 case from this court, Cygnus Telecoms 536F1343 at 1351-53, which makes clear you've got to have it in the record on the motion you're challenging on appeal. In that case, it was a summary judgment motion. In this case, it's a 101 motion, but it's not in the record. What about the argument that the court didn't evaluate step one? I don't think that's correct. What the district court did was say there are a couple of ways you can characterize it. This court has done the same, for example, in AMRAP. You can do it at the 30,000-foot level or at a lower level. And one of the framings was secured content delivery, and the other was delivering content secured with licenses and encryption. Both of those are abstract ideas. And as I think Your Honor pointed out, at pages 14 and 15 of the appendix, the district court identified the latter, more narrow phrasing, as the abstract idea at issue. It's also in the footnote at appendix 13. Perhaps he should have done it a fourth time at appendix 10, but we're not grading opinions here. And as I think you've all pointed out, it's de novo review here. Do you think those rather general descriptions of what the abstract idea is a fair characterization of what's going on in claim one, given that the Supreme Court, and I think we have warned, to not overly abstract claims? Yes, I do. And if you take a look at the claims from top to bottom, they're about DRM, or digital rights management. They call for authenticating the user, authenticating the device, sending the content in encrypted form, sending the content key, sending usage parameters so that you can control how it's used. This is all about digital rights management, controlling the use of digital content. How would you distinguish this case from FinChen? Well, FinChen had really a new concept. You're basically doing behavioral-based checking for viruses. That was really the new concept that's talked about throughout patent. This is nothing like that. Why isn't the new concept here what your friend says, which is combining the user parameters with the key, I think? I get the terms wrong, but I think that's what he said. Well, he does talk about combining the content key with the usage parameters and then encrypting them together. Well, first of all, it's nowhere to be found in the specification. It's added 10 years into prosecution in order to overcome an anticipation rejection. There's nothing on which this patent focuses. At most, it's an additional wrinkle that you need to deal with at Step 2. It's a detail about how this digital rights management is going to occur. It's not the focus of the claims. It's a Step 2 issue. It's never counted as an invention in the specification. It's never counted as an invention in the prosecution history. They didn't add any declaration that said, oh, this is the greatest thing, and we added this. All they did is we can overcome clements because we're going to combine these two things. There's no apparent significance to it. So I don't think that that is the focus of the invention at Step 1. I think it's fair to look at what the purported invention was, whether it's the 144 advantages or something that's more specific in the claims. You read the claim, and you read it in light of the specification. Maybe you can read it in light of the prosecution history as well, but there's nothing that suggests that the focus of this invention is the detail on which they're now deciding to focus. So I think it is a legitimate Step 2 issue if that additional element is something that transforms the claims into substantially more than the abstract idea at their core. And I don't think, for two reasons, I would say that it is not a transformative inventive concept. First is a legal reason. It's not described in the specification, and although this court has not addressed the issue because no one has had the nerve to suggest that something not described in the specification can be an inventive concept, I would argue that as a matter of law, it cannot be because you cannot claim as an inventive concept what you don't describe. So the second argument is that all they have done is basically done a slight variation on the prior art. Symmetric and asymmetric encryption were known. Symmetric encryption of content keys was known. Asymmetric encryption of the little stuff was known. Combining the usage parameters and the content key was known. All they're saying is it was inventive to combine these two and then asymmetrically encrypt them afterwards rather than doing it separately. And there's no apparent advantage to that. You're encrypting the same material. You're just combining it, then sending it, then breaking it apart. You've got the same thing at the start. You've got the same thing at the end. This is not a transformative concept that changes this into patent-eligible subject matter. I'd just like to add that there is no fact issue here. This isn't Berkheimer. We don't have anything in the specification that creates any sort of a fact question. There's no allegations in the complaint that create a plausible argument of this being an inventive concept. We don't have anything, as I mentioned, in the prosecution history. Where do I find the prosecution history in the appendix? It's in Volume 5. It speaks to the reasons for this amendment? It's in Volume 5. The allowance is at 91-16 to 18. And the amendment to overcome Clements is at 91-35 and 91-45 to 95-48. So basically, here's what happened. Ten years into prosecution, they've got a set of claims. They're rejected as anticipated by Clements. They put in new language that includes this limitation. And they say, this does not appear in Clements. The examiner says, you're right. It's not in Clements. It's not anticipated by Clements. The examiner didn't check to see whether it was in the written description. But there was no discussion of this being particularly inventive. It was just saying it is not anticipated. So there's no real analysis other than to say it's not exactly anticipated by one prior art reference. I just don't think that's sufficient to get you past the threshold for a motion to dismiss on 101 grounds. There's nothing in the intrinsic evidence that suggests that it's inventive. They're trying to rely on the Zakevich Declaration after the fact in a reply before appeal. And that's simply too late. If your honors don't have any further questions, I'll submit. Thank you, counsel. Mr. Risley has almost two minutes for rebuttal. Thank you, your honor. First, with respect to the Zakevich Declaration, your honor, that is in the file history. As in Data Engine, I think it's relevant and fair game. The district court in Data Engine did not consider the prosecution history, and this court should. With respect to the timeliness, the defendant submitted it as part of a claim construction brief. We had a combined claim construction and 101 hearing. The declaration is in the prosecution history. Is that what you're saying? In the entire prosecution history, yes, your honor. No, no, the declaration that you relied on in your reply brief is in the prosecution history. Did I misunderstand you? Yes, I think that the IPR record is part of the prosecution history of the 764 patent. It is not part of the original prosecution history, if that's your question. Oh, okay. In fact, the defendants at police filed a motion to stay because they argued to the court that the file history was evolving and the motion to stay was granted until the IPR was concluded so that the court could have the IPR record before it, including the Zakevich Declaration and the PTAB decision finding the claims patentable. Also, they could have raised this before. They could have filed a motion with the court. They didn't. We think that they've waived it. They haven't ever raised written description before the district court with respect to this specific claim limitation, so that's another reason why it's not before the court. Finally, I wanted to read into the record, your honors, that they have cited to the prosecution history, including specifically the IPR record, multiple times in their briefing. At their red brief at page 41, they cite APX 7832. Red brief 43, they cite APX 4737 to 4738, and they cite the IPR decision at length in the red brief at pages 51 through 54, and they argue that the file history is fair game in the red brief at 12 and at 54 through 56. So they've certainly relied upon the IPR record as well. I don't think it's fair for them to pick and choose which portions of the IPR record are fair game versus which aren't. And finally, if I could just very quickly, having convinced you on step one, certainly on step two, there's no dispute that there's a gap. They've admitted that there was a gap. The district court never considered the exact limitation of the claim. A content license comprising a content key with usage parameters, it's asymmetrically encrypted. That's the exact limitation that PTAB found was not an insignificant addition by any reasonable standard. Thank you, counsel. Thank you. Any further advisement?